## CIRCUIT COURT OF ALBEMARLE COUNTY

Douglas W. Rogers

v.

Commonwealth of Virginia et al.

October 27, 1995

Case No. 6054-L

BY JUDGE PAUL M. PEATROSS, JR.

Defendants Julie Fisher and Joan Walker have entered a Plea of Sovereign Immunity in response to the medical malpractice action filed by plaintiff Douglas W. Rogers. Mr. Rogers alleges that he was injured as a result of the defendants' negligence while he was a patient on surgical floor 4-West of the University of Virginia Medical Center ("the Hospital") in May of 1993. At all times relevant to this action, both defendant Fisher and defendant Walker were employed by the Hospital, the former as a registered nurse and the latter as a patient care assistant.

The issue in this case is whether the defendants, as employees of a state institution, are entitled to sovereign immunity from liability in tort. Counsel presented oral argument on the matter on October 16, 1995, and have had the opportunity to submit briefs. The facts regarding the events of May 20, 1993, are in dispute but are set forth below as stated in the plaintiff's Motion for Judgment.

*Facts*

On May 17, 1993, Mr. Rogers was admitted to the Hospital for an aortic valve replacement. Following the surgery, Mr. Rogers was transferred from the intensive care unit to 4-West. On the morning of May 20, 1993, while seated in a chair eating his breakfast, Mr. Rogers suffered a cerebral artery embolic infarct. An aide summoned a nurse, and defendant Fisher responded.

After a brief examination, Ms. Fisher determined that Mr. Rogers had suffered a cerebral incident and summoned two physicians, who examined

Mr. Rogers and ordered a CAT scan. Ms. Fisher and at least one of those physicians then directed defendant Walker to assist Mr. Rogers back to his bed.

Ms. Walker assisted Mr. Rogers to his feet and encouraged him to walk towards his bed. As he attempted to take a step to his right, Mr. Rogers fell against the side of the bed, pinning his right arm behind him and tearing the rotator cuff of his right shoulder. Mr. Rogers alleges that the defendants' negligent violation of the standard of care was the proximate cause of his injuries.

Also relevant to the Plea of Sovereign Immunity is the affidavit submitted by Jan D. Ivey, the manager for the Thoracic and Cardiovascular Services of the Hospital who has supervisory responsibilities for 4-West.

In her affidavit, Ms. Ivey states that 4-West, where the Hospital provides sophisticated acute care to thoracic, cardiac, and vascular surgery patients, is one of only two floors of its kind in the western region of Virginia and is the only such floor at a teaching institution. Without nurses to staff the unit, the Hospital could not provide this sophisticated care and could not train surgical specialists in this area of expertise.

The nurses who staff 4-West are supervised by more senior nursing staff, hospital administrators, and physicians employed by the Commonwealth. The Commonwealth, through the hospital administrators, controls when and where the nurses work, the number and identity of the patients they see, the equipment they use, the procedures and policies they follow, and the compensation they receive.

### Analysis

The Supreme Court's most recent pronouncement on the doctrine of sovereign immunity as applied in the medical malpractice context is *Lohr v. Larsen*, 246 Va. 81, 341 S.E.2d 642 (1993). The *Lohr* Court found that a state-employed public health physician was entitled to the protection of sovereign immunity for his alleged failure to order mammograms and needle biopsies after detecting a lump in a patient's breast. In reaching its conclusion, the Court considered the factors first enunciated in *James v. Jane*, 221 Va. 43, 282 S.E.2d 864 (1980), combining two of the factors to yield a three-part test:

(1) the employee's function and the Commonwealth's interest and involvement therein;

(2) the employee's use of judgment and discretion; and

(3) the Commonwealth's control over and direction of the employee.

*See Lohr*, 246 Va. at 85-88. Satisfaction of all the elements is necessary before a court may afford the protection of sovereign immunity. *See Id.* at 88.

1. *The Employee's Function and the Commonwealth's Interest and Involvement Therein*

The *Lohr* court found that the Commonwealth had a significant interest in Dr. Larsen's function as a provider of public health care services and contrasted the significance of that interest with the "slight" interest of the Commonwealth in the *James* physicians' treatment of private patients. *Id.* at 86. In making this distinction, the *Lohr* court characterized the *James* physicians' function as that of "independent contractors" and "essentially private practitioners." *Id.* (citing *Messina v. Burden*, 228 Va. 301, 313, 321 S.E.2d 657, 663 (1984), and *Bowers v. Commonwealth*, 225 Va. 245, 252, 302 S.E.2d 657, 663 (1983)). Dr. Larsen, on the other hand, functioned as an "essential part" of a clinical program which furthered the Commonwealth's objective of protecting, improving, and preserving the public health. *Id.*

The Supreme Court has also identified medical research, education, and training as functions which further a significant interest of the Commonwealth, namely "training and maintaining a pool of specialists skilled in a particular discipline." *Gargiulo v. Ohar*, 239 Va. 209, 213, 387 S.E.2d 787, 791 (1990) (physician involved in medical research program granted immunity). *See also Lawhorne v. Harlan*, 214 Va. 405, 200 S.E.2d 569 (1973) (surgical intern granted immunity), *overruled on other grounds*, *First Virginia Bank-Colonial v. Baker*, 225 Va. 72, 301 S.E.2d 8 (1983).

The Hospital's 4-West unit represents the only floor of its kind in the western region of the Commonwealth where physicians may train in the particular specialty of thoracic and vascular surgery. In the instant case, Ms. Fisher, a nurse, and Ms. Walker, a patient care assistant, served dual functions on 4-West. In performing their duties, the defendants not only cared for individuals but also enabled the resident physicians on 4-West to cultivate their specialized training. While the state's interest in the treatment of a specific patient may be slight, the state's interest in the specialized training of physicians to treat particular illnesses is significant.

In *Lohr*, the court acknowledged that the health care services necessary to further the state's interest could not be delivered without skilled physicians. 246 Va. at 86. Similarly, practical training of the physicians on 4-West would be impossible without the help of nurses and patient care

assistants. Therefore, the Court finds that the defendants' function and the Commonwealth's interest in that function rise to the level of entitlement to sovereign immunity.

## 2. *The Employee's Use of Judgment and Discretion*

The government employee's use of judgment and discretion is another element which must be weighed in determining the issue of immunity. *Id.* at 87. While the defendants are under the supervision of more senior nursing staff, the supervision is not constant, and the defendants' training equips them to make independent judgments about how to carry out their duties throughout each day. As evidenced in the allegations of the instant case, deciding whether and how a patient should be moved after a possible injury involves judgment and discretion.

## 3. *The Commonwealth's Control Over and Direction of the Employee*

The extent of the Commonwealth's control over and direction of its employee is also considered regarding a grant of immunity. *Id.* In the instant case, the Commonwealth, through the administrators of the Hospital, clearly controlled and directed the defendants in their employment. The defendants could not choose which patients they treated nor what fee would be charged for their services. Hospital administrators determined the hours the defendants worked, the equipment they used while working, and the compensation they received.

While the Commonwealth does exercise control over the parameters of the defendants' work, as discussed, *supra,* the defendants also exercise considerable judgment in performing their duties. The *Lohr* court acknowledged the apparent conflict between these elements of state control and of employee discretion, stating that "when a government employee is specially trained to make discretionary decisions, the government's control must necessarily be limited." *Id.* at 88. An appropriate balance exists between these two elements in the instant case and thus permits a grant of sovereign immunity.

### Conclusion

For the foregoing reasons, the defendants' Plea of Sovereign Immunity is granted.